let's go The next case is number 057189, Kathleen E. Golden against the Department of Veterans Affairs. Mr. Cameron. Yes, your honor. May it please the court. Your honors, I represent Mrs. Kathleen Golden, the appellant in this case. In this appeal, she raises the issues, the legal issues of whether the Veterans Court improperly interpreted the rebuttal of the statutory presumption of regularity, and whether the Veterans Court improperly interpreted the legal standards for rebutting the presumption of regularity. We believe that based upon the undisputed evidence in the record, that if that court had properly interpreted those two issues, that that court would have found that she had timely filed her notice of appeal. Let me go back and go over a brief summary of the facts involved in the case. Mr. Cameron, as I understand it, you're basing your argument on irregularities in perhaps the maintenance of files or record keeping, but where is there some evidence of irregularity in mailing that would overcome the presumption? The irregularities in terms of mailing, your honor, would involve, for example, the return copy of the board decision at page 89 of the appendix, where one copy of the board decision appears to have been mailed on February 13, 2001, and was returned to the secretary nine days later on February 22, 2001. But as I understand it, that copy was obtained from the Montgomery, Alabama facility. This was a copy of the CC, if you will, of the original mailing, which, if anything, seems to support the regularity of the mailing, not rebutting. Well, your honor, if it was. Unless I'm mistaken of. Well, what the Veterans Court said in its decision is that this decision was obtained by the secretary from the state of Alabama Department of Veterans Affairs, Ms. Golden's representative. And that was obtained in the course of her investigating the regularity of the mailing, trying to reconstruct the file that had been lost. Right. Doesn't that suggest that? I mean, how else would the Montgomery, Alabama division have a copy other than the receipt in the normal course? Well, I'm not sure that in the normal course that a copy does go to the regional office. That was the averment that was made? Well, I mean, I think that in the decision, I think the argument was made that this copy was obtained from the state representative, Ms. Golden's representative, and not from the regional office. That's correct. But doesn't that support the regularity of mailing? The only reason that her representative would have been provided with a copy is because the decision was mailed. Right. But what I'm saying is based on this stamp, it doesn't say state of Alabama Department of Veterans Affairs. No, but you have an averment as to where this came from. So that stamp is not standing out there all by its lonesome. Right. It's not, your honor. There's an argument that's been made that it was received from that office. That's correct. We also contend that Mrs. Golden submitted an affidavit that she did not receive the decision in a timely manner. She didn't receive it until April or May. And the secretary has also conceded in its motion to dismiss that it failed to retain a stamped and dated copy of the decision, which reflects the fact that it wasn't properly carried out. In this case, there's a regulation at 20.1100A that requires the board to stamp on the face of the decision the date of the mailing. So the fact that the board didn't retain a copy tends to reflect that it didn't stamp and date the decision. This appeal also presents the issue of whether the Veterans Court improperly interpreted this court's decision in Barrett on the requirements for equitable tolling in a case involving mental impairment. During the course of this 120-day appeal period, which would have been between February 13 and June 13, 2001, Mrs. Golden was hospitalized for three days for her depression. The registered nurse practitioner who works for the Department of Veterans Affairs provided a letter which stated that she was seriously impaired during at least a month of that 120-day appeal period. In the Veterans Court's decision, it said essentially, it appears to assume that she has some degree of impairment, but then stated that impairment does not equate with incapacity, implying that somehow the medical providers have to use this magic word incapacity or incapacitated. So I think that that court completely glossed over. It was completely glossed over. Was this something that you pressed at the time, or did you rely on the fact that there was no date stamp on the copy that she received? We did both, Your Honor. We did both. We relied on the lack of the date stamp. We argued to that court that given the late mailing and the late receipt by Mrs. Golden, that she filed her motion for reconsideration with the board within the 120 days after the decision was mailed to her. And we also argued that and provided medical evidence to the Veterans Court that during the 120-day appeal period, during which she could file either the notice of appeal or the motion for reconsideration, that she was hospitalized for depression. We provided the secretary's nurse's letter, which stated that essentially for at least 30 days of that period of time, she was seriously impaired in terms of her ability to perform even simple functions, keeping track of dates and things like that. Let's hear from the secretary, Mr. Cameron. We'll pursue this aspect with him. Thank you. Good morning, Mayor. Please, the court. Mr. Dufault. There are two issues that are before the court. The first is whether the CAVC properly found that Mrs. Golden's appeal filed with the CAVC was untimely. And the second issue is whether the CAVC properly declined to apply equitable tolling to that 120-day period. Well, even accepting all of the evidence as to when it was actually mailed, there also seems to be little dispute, but that there was an impairment, a psychological impairment during this period. Shouldn't this, of its own, allow for the not very large discrepancy in overdue filing? Well, let's turn to your issue about whether there is a dispute. There was a factual finding that was made by the CAVC, and that factual finding was that she didn't have a mental incapacity that rose to the level of the standards that had been enunciated in Barrett. I thought the Court of Veterans Claims could not make that finding. Well, it can apply the standards and look at the facts that were before it. Those facts were presented before it by Ms. Barrett on her motion for reconsideration. What were the findings that it made? Well, the findings they made was that she was simply impaired. At the beginning of the decision, the CAVC went through all the evidence that was supplied by Ms. Golden. They had the nurse practitioner's note. They had the evidence that she was hospitalized for two nights and three days. They had evidence that she was working as a teacher throughout this period, and they had evidence of the degree of her psychological impairment, which indicated that she was anxious, she was nervous, she was depressed, and she sought hospitalization. Now, what the CAVC did was it took the standards that were announced in Barrett. It stated that you can't just have mild impairment. You have to actually have something that rises to a unique level. If you're hospitalized, how could it be mild if you're actually hospitalized? Well, she was hospitalized just for three days, and she was still working as a teacher both before and after. People aren't hospitalized casually. No, they aren't hospitalized casually. People go for lots of different reasons. You might break your arm and have to go to the hospital, and a physical ailment is as close to a hospital as well. No one says that this is a physical ailment? No, this is a mental ailment, but what I'm saying is that you can still go to a hospital logically and still be able to function in society, still be able to carry on different tasks that you have to do to function. She could still call people, have people do things on her behalf. Now, what happened here was she had her 120-day appeal period. Now, both before, arguably during, and after her hospitalization, she still could have filed her motion for reconsideration within that 120-day time period. For equitable tolling, it's a doctrine. How do you know that? Because there's no evidence that supports that she couldn't do that. When applying these Barrett standards, the burden is on the person that's trying to get equitable tolling to demonstrate that they couldn't function, they couldn't carry on their tasks. How is she going to do it? She would have to present some sort of evidence to indicate that, and that wasn't done here. Could it be that it should be sent back to the VA to let them do what they usually do and develop her conditions and report to the court? Well, not in this case, because she already had her opportunity to actually demonstrate that equitable tolling was appropriate in her case. She put her best foot forward, presented the evidence that she had. She didn't have a doctor's opinion, but she was able to get one from a registered nurse. She did everything she possibly could to put all the evidence that was there to get somebody that could vouch for her and state that she couldn't do anything for this short period. But even if she were, let's just assume for the sake of argument... Why didn't she have a doctor's report, a doctor's evaluation? All that was presented was the registered nurse's evaluation. She was doing all this as a layperson by herself, wasn't she? Perhaps, perhaps. Isn't the VA supposed to help veterans? The VA, of course, has a duty to help veterans. I mean, that's what they do, and that's what the whole benefit system is set up for. Then why don't they do it? This isn't about whether the VA should help her or not. The issue here is whether equitable tolling should be applied based upon the facts of Ms. Gordon's case. The court doesn't have the ability to investigate, to make findings of fact. It's not supposed to make findings of fact. To the extent it does, it exceeds its authority. If there is a question about it, it ought to be sent back, don't you think, to the VA to develop it? In accordance with the duty to assist? Well, for them to assist her in demonstrating that she was incapacitated for purposes of equitable tolling, they wouldn't have regulatory statutory authority to do that. All the claims that go before the BVA, they percolate out from the RO decision. There's a notice of disagreement, and then there's actually issues the BVA has to consider, and then the CABC has jurisdiction over those issues. We'd be circumventing that whole process. It didn't take jurisdiction. Well, of course, it didn't take jurisdiction. So it wasn't there. It was still, in reality, in regards to technicality of a docketing of a case, it was still in the agency. It was still in the agency, but if the CABC didn't have jurisdiction to consider the case in the first place because she didn't file her motion for reconsideration in a 120-day time period, it certainly wouldn't have jurisdiction to consider issues that were never presented to the RO or to the BVA. Well, you're begging the question. The question is, does she have the right to have it told because of the incapacity, and that hasn't been developed. That excuses the 120-day default. What we would argue to the court is that pursuant to this court's jurisdiction of 7292, it doesn't have jurisdiction to determine whether the case will be adequately developed below or not. The CABC thought it was. It had properly applied the doctrine of equitable tolling. It took a direct quote from this court's decision in Barrett as its standard and said that based on its factual determination, she hadn't met that standard. Didn't Barrett also say that it ought to go back to the VA to be developed? Well, that's what happened in Barrett, but the CABC declined to apply equitable tolling based on mental incapacity, and that's why it went back. This court found that that was wrong as a matter of law because you can't be stuck with the two different prongs of the Irwin test regarding equitable tolling. But in this case, this CABC stated, yes, you can apply it in certain instances. This is what the standard is, and based on our review of the record, it doesn't apply in this case. This court can't review its application of the doctrine to those facts, and it can't review the facts as well. But we can review whether or not the court had exceeded its authority and should have sent it back to be developed. I'm not sure that it can, provided that it actually announced the correct standard. It didn't misinterpret equitable tolling. What about the statutory duty to assist? What about the acts of Congress that we've seen in recent years because of concern of the stone wall that the VA on occasion has raised to claims which just haven't gotten developed because of inadequate assistance? I would have thought that your role might have been to request a remand, to investigate and to provide that duty. Well, as this court stated in Bailey, and it's stated since then, that the doctrine of equitable tolling has to be compassionately applied, particularly in cases involving veterans. That's not in dispute. But this court did announce certain standards in Barrett regarding under what situations it can indeed be applied. The CABC appropriately applied those standards to the facts of its case, and this court lacks jurisdiction to actually undermine that decision to the extent of its application to the facts, or to make a determination of whether the facts before the CABC weren't sufficient to make that finding. Now, yes, the doctrine of equitable tolling has to be compassionately applied, but we argue it was pursuant to this court's standards announced in Barrett. If the record reflected a clear failure of the Veterans Court to appreciate the seriousness of the mental incapacity of the case, would we not have jurisdiction to remand? Arguably, no. I mean, I can't imagine a case where that would be the case. You would have to be blind to that? Well, again, the court's standard review is limited by statute, and we have a doctrine of equitable tolling. If you were to find somehow that you didn't believe that the facts were sufficient to support that finding, this court can't overturn that decision based on those grounds alone. The only way it could possibly do it would be by stating that, based on the facts of the case, it somehow misinterpreted the doctrine. So couldn't we determine that there was a lack of legal sufficiency of the evidence as a matter of law? That's the only way that this court possibly could. And the court would have to make a finding that somehow the actual doctrine was undermined and the evidence wasn't legally sufficient. That's correct. Okay. I think we have the government's position. Thank you. Thank you. I appreciate it. Mr. Cameron? I just have a few responses, Your Honor. In this case, when we were attempting to develop this case, improve the mental capacity, I tried to contact Mrs. Golden's treating doctor, physician, or psychiatrist at the VA, and she had moved and nobody had her forwarding address, so I couldn't find the psychiatrist. She was no longer with the VA system. But I did find— You're saying such a remand would be useless, assuming that we do have jurisdiction to do so?  I'm merely telling the court that that's why we relied on Ms. Moon's report, the certified secretary's nurse practitioner, in which she stated that during at least 30 days that she demonstrated cognitive inefficiency and difficulty comprehending deadlines, difficulties conducting routine business matters. I think as far as this question of this court's jurisdiction, I think that this court— We'll figure that out. Okay. Did you make a specific request to remand to the VA for any development of her medical evaluation of her condition during the entire period? We didn't. Or a sufficient amount of the period to justify tolling? We didn't, Your Honor, because I didn't interpret Barrett in that box. You say you did or you did not? I did not, Your Honor. You did not? I did not interpret Barrett to require the VA to develop mental incapacity. In fact, I think the CAVC's cases have turned a different way and found that the VA doesn't have the duty to do that. Well, what the CAVC seems to be doing is to say, okay, you guys decided Barrett, now let's see you enforce it. Well— They're ignoring it, aren't they? One could draw that conclusion from some of the cases, but— Well, I think you can draw that conclusion from all the cases that we've seen so far. Well, I don't want to say too much about that, but I think that if the Veterans Court did not apply the test, the legal standard correctly, I think that this Court does have jurisdiction to reverse the remand on that issue. I would like to point out one simple fact, which is that from this date of the Board decision on February 13th, assuming that it were properly mailed on February 13th, 2001, Mrs. Golden had until June 13th, 2001, to file her motion for reconsideration to abate the period over notice of appeal with the Veterans Court. Due to her mental incapacities and her problems in receiving the decision, she was 14 days late. She postmarked her motion for reconsideration on June 27th. That pales to insignificance when we look at it. The Board took three years. The fact that they held her motion for reconsideration for three years, and then when they discovered it, they turned it down in 14 days or so. I understand, yeah. But the decision said it gave careful consideration to it, though. I think that if equitable tolling means anything, if that 120-day statutory notice of appeal period means anything, I don't think that if we take a 30-day period out due to the Veteran's incapacity due to a mental impairment that she's reduced to a 90-day notice of appeal period. I think that's inconsistent with Congress's intent in saying that a Veteran's entitled to a 120-day notice of appeal period. That's a very short appeal period, especially for someone with a mental impairment or a serious physical problem who's not represented by counsel. Thank you, Mr. Cowley. Thank you, Your Honor. Thank you, Mr. Defoe.